**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:21-CR-0016 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TROYELL HILL-PRICE | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Defendant Troyell Hill-Price ("Hill-Price") is charged in a six-count

indictment with one count of possession of a firearm by a prohibited person in

violation of 18 U.S.C. § 922(g)(1).  (Doc. 1.)  Hill-Price moves this court to

reconsider its decision denying his motion to dismiss Count 6 of the indictment

based on the argument that Section 922(g)(1) violates the Second Amendment to

the United States Constitution as applied to him.  (Doc. 109.)  For the reasons that

follow, the court will grant the motion for reconsideration, but deny the motion to

dismiss Count 6.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 3, 2021, Hill-Price was charged in a six-count indictment with

three counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1)

(Counts 1 through 3), one count of possession with intent to distribute cocaine base

in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count 4), one count of

possession of a firearm in furtherance of a drug trafficking crime in violation of 18

1

U.S.C. § 924(c)(1)(A) (Count 5), and one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1) (Count 6).  (Doc. 1.) Following a two-day bench trial, the court rendered a verdict on December 20, 2022, finding Hill-Price not guilty of Counts 1 through 3, but guilty of Counts 4, 5, and 6.  (Doc. 92.)  The court issued a post-trial memorandum making specific findings of fact regarding the counts of conviction.  (Doc. 97.)  In brief summary, officers obtained a search warrant for Hill-Price's residence and, upon entry, took Hill-Price into custody.  A search of Hill-Price yielded crack cocaine from his pocket and $2,400.  The search of the residence recovered crack cocaine, paraphernalia commonly used to prepare, package, and distribute crack cocaine, $20,348 in cash, and two firearms, specifically, a Glock semiautomatic pistol, model: 42, .380 Auto, serial number: ACKM242, and a H&R Arms Company double-action revolver, model: Young American Double Action, caliber .22, Serial number: 479044.

Hill-Price was found to have violated Section 922(g)(1) because he possessed the two firearms, which were shipped and transported in interstate and foreign commerce, after he was previously convicted of at least one crime punishable by imprisonment for a term of more than one year.  (Doc. 92; Doc. 97, pp. 5–10.)[1]  The Government asserts that Hill-Price has multiple convictions that

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

disqualify him from possession of a firearm pursuant to Section 922(g)(1), including 2007, 2008, and 2012 Pennsylvania convictions for manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance. (Doc. 149, pp. 4–5.)

On August 16, 2022, Hill-Price filed a motion to dismiss the indictment based on the argument that the application of Section 922(g)(1) to him violates the Second Amendment. (Doc. 66.) After the motion was fully briefed, the court denied the motion on November 23, 2022, based on the state of the law at that time. (*See* Docs. 66, 67, 68, 72, 80.)

Following the bench trial and verdict, on June 29, 2023, Hill-Price filed a motion for reconsideration of the court's order denying his motion to dismiss, which was fully briefed. (Docs. 109, 110, 124, 129.) Therein, he asserts that reconsideration is warranted because, following the court's denial of his motion to dismiss, the Third Circuit vacated the panel opinion in *Range v. Attorney General*, 53 F.4th 262 (3d Cir. 2022) (*per curiam*), and then issued an *en banc* opinion in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) ("*Range I*"), finding that Section 922(g)(1) violates the Second Amendment as applied to Bryan Range based on the application of the holding in *New York State Rifle Association v. Bruen*, 597 U.S. 1 (2022). (Doc. 109.)

On January 9, 2024, this court entered an order staying the resolution of the motion for reconsideration pending the Third Circuit Court of Appeals' review of the consolidated appeal in *United States v. Quailes*, No. 23-2533 (3d Cir. 2023). (Doc. 139.)  Following the Third Circuit's decision in that appeal, the court directed the parties to confer and determine whether *Quailes* and *United States v. Moore*, 111 F. 4th 266 (3d Cir. 2024) applied to the facts of this case, namely, whether Hill-Price was serving a term of supervised release, probation, or parole for any state or federal criminal offense at the times when he is alleged to have committed the 922(g)(1) violation in this case.  (Doc. 143.)  The parties complied and notified the court that Hill-Price was not on state or federal probation, parole, or supervision at the time of the offenses alleged in the indictment.  (Doc. 144.)  Thereafter, the court directed the parties to submit supplemental briefs to address the impact of relevant decisions issued while Hill-Price's motion for reconsideration was stayed.  (Docs. 146, 149, 150.)

Hill-Price is awaiting sentencing, which was generally continued pending resolution of this motion for reconsideration.  (Doc. 139.)  Hill-Price has been detained since his initial appearance and arraignment on March 25, 2021.  (*See* Doc. 18.)

### MOTION FOR RECONSIDERATION

Hill-Price originally moved to dismiss Count 6 based on the holding of *Bruen*. The court denied the motion based on the panel opinion in *Range*, which was binding precedent directly on point that controlled the outcome of Hill-Price's motion to dismiss. Hill-Price now moves to reconsider that denial because the Third Circuit's *en banc* decision in *Range I*, which vacated the panel opinion, and *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) ("*Range II*"), which followed the United States Supreme Court's vacatur of *Range I* are intervening changes in the controlling law. (Doc. 110, pp. 1–2; Doc. 146.) In response, the Government submits that Hill-Price has not met the burden for reconsideration, but then fully addresses the merits of Hill-Price's motion to dismiss. (Docs. 124, pp. 6–7; Doc. 149, p. 8.)

A party seeking reconsideration of a district court's order must show either (1) "an intervening change in the controlling law"; (2) the availability of new evidence that was not available when the court issued its prior order; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). In light of the fact that the court denied Hill-Price's *Bruen*-based motion to dismiss based on the panel opinion in *Range*, which the court found to

be controlling, and then that controlling panel opinion was vacated and replaced by two *en banc* opinions reaching the opposite conclusion, Hill-Price easily satisfies the standard for reconsideration based on an intervening change in the controlling law. The Government has not presented any argument to the contrary. Accordingly, the court grants Hill-Price's motion for reconsideration.

## MOTION TO DISMISS

### A. Standard of Review

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). In his pretrial motion to dismiss, Hill-Price asserts an as-applied challenge to the constitutionality of Section 922(g)(1). (*See* Docs. 66, 110, 129, 146, 149, 150.) In order to resolve an as-applied challenge, the court determines whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the movant's conduct. *Spence v. Washington*, 418 U.S. 405, 414 (1974).

### B. Discussion

#### 1. The Parties' Arguments Regarding the Constitutionality of Section 922(g)(1) As Applied to Hill-Price[2]

Hill-Price argues that applying the two-part test articulated in *Bruen*, 597 U.S. at 1, Section 922(g)(1) impacts his rights as a person protected by the Second Amendment, and that the law is inconsistent with the Nation's historical traditions of firearms regulation.  (Doc. 110, pp. 4–11.)  The Government argues in opposition that *Range I* was wrongly decided[3] and distinguishable from this case in any event.  (Doc. 124, pp. 7–8.)   The Government concedes that Hill-Price is one of "the people" protected by the Second Amendment pursuant to *Range*, but argues that Hill-Price's motion should be denied for two independent reasons.  (*Id.* at 12–13.)  The Government asserts first that Hill-Price fails to maintain that he possessed the firearm for a lawful purpose, and second that the prohibition on firearm possession in Section 922(g)(1) as applied to Hill-Price is supported by relevant historical tradition.  (*Id.* at 13–28.)

---

[2] The court notes that it ordered supplemental briefing on the motion for reconsideration, not the motion to dismiss.  (*See* Doc. 145.)  Because the parties briefed the substance of the motion to dismiss in their supplemental filings, the court relies on them to resolve the motion to dismiss. (*See* Docs. 146, 149, 150.)

[3] In its supplemental brief, the Government does not argue that *Range II* is wrongly decided. The Government has not filed a petition for writ of certiorari from the decision in *Range II* and the time to file has expired.  Thus, it appears that the Government does not contend that *Range II* was wrongly decided, and the court will not address that argument.

In reply, Hill-Price disagrees with the Government's assertion that he is required to state that he possessed the firearm for a lawful purpose because neither the statute nor *Range I* requires such proof. (Doc. 129, pp. 2–3.) Additionally, Hill-Price submits that the Government has not met its burden of showing that Section 922(g)(1) complies with the nation's "historical tradition of firearm regulation." (*Id.* at 4–8.)

In their supplemental briefs, each party addresses the impact of four relevant decisions issued while Hill-Price's motion for reconsideration was stayed. (Docs. 146, 149, 150.) Specifically, the parties address *United States v. Rahimi*, 602 U.S. 680 (2024), *Range II*, 124 F.4th at 218, *United States v. Quailes*, 126 F.4th 215 (3d Cir. 2025), and *Pitsilides v. Barr*, 128 F.4th 203 (3d Cir. 2025). In Hill-Price's supplemental briefs, he maintains that *Range II* reaffirmed *Bruen*'s two-step framework and that it is undisputed that he has met the first step of the *Bruen* test. (Doc. 146, pp. 4–5.) Hill-Price further submits that "the Government has not met its burden of showing that permanent disarmament of Mr. Hill-Price is consistent with history and tradition." (*Id.* at 5.) And, for the first time, Hill-Price argues that the "dangerousness" requirement creates vagueness in Section 922(g)(1) that rises to the level of a due process violation rendering the statute facially unconstitutional. (Doc. 150, pp. 6–7.)

## 2. The Text of the Second Amendment and Significant Rulings on the Second Amendment

The text of the Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST. amend. II.

### i. Supreme Court Precedent from *Heller* to *Rahimi*

There was a sea change in the Supreme Court's analysis of the Second Amendment from the militia-based rationale articulated in *United States v. Miller*, 307 U.S. 174 (1939), to the pre-existing individual right explained in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010).  In those decisions, the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense."  *Bruen*, 597 U.S. at 8–9 (citing *Heller*, 554 U.S. at 570; *McDonald*, 561 U.S. at 742).  And then, in 2022, the Court held in *Bruen* "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."  *Id.*

Importantly, in *Bruen*, the Court established a two-step test to determine if a particular regulation violates the Second Amendment:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, . . . the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm

regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)).

To measure consistency with historical firearm regulations, the modern regulation must be "relevantly similar" to historical predecessors. *Id.* at 29. The Court explained that the burden on the Government is to identify a "well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30. And then, in *Rahimi*, the Court clarified that, when conducting *Bruen's* history-and-tradition inquiry, "the appropriate analysis . . . [is] whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." 602 U.S. at 692. The Court rejected the idea that the examination of historical analogues signals "a law trapped in amber." *Id.* at 691.

### ii. Third Circuit Precedent Applying *Bruen* and *Rahimi*

The Third Circuit had occasion to apply both *Bruen* and *Rahimi* in the appeal filed in the *Range* case. This appeal has traveled a long procedural road to finality. In 2020, Bryan Range filed suit in the Eastern District of Pennsylvania, seeking a declaration that Section 922(g)(1) violates the Second Amendment as applied to him. Applying then-controlling Third Circuit precedent, *United States*

*v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), *Binderup v. Attorney General*, 836

F.3d 336 (3d Cir. 2016) (en banc) (plurality), *Holloway v. Attorney General*, 948

F.3d 164 (3d Cir. 2020), and *Folajtar v. Attorney General*, 980 F.3d 897 (3d Cir.

2020), the district court granted summary judgment to the Government.  *Range v.*

*Lombardo*, 557 F. Supp. 3d 609, 611, 613–14 (E.D. Pa. 2021).  Range appealed.

While his appeal was pending, the Supreme Court decided *Bruen*.  A Circuit

panel affirmed the district court decision, applying *Bruen* and concluding that the

Government met its burden to show that Section 922(g)(1) reflects the Nation's

historical tradition of firearm regulation.  *Range v. Att'y Gen.*, 53 F.4th 262, 266

(3d Cir. 2022) (per curiam).  Range petitioned for rehearing en banc, and the

Circuit granted the petition and vacated the panel opinion.  *Range v. Att'y Gen.*, 56

F.4th 992 (3d Cir. 2022).  The en banc court reversed and remanded for the District

Court to enter judgment in favor of Range, finding that Range remained one of

"the people" protected by the Second Amendment and the Government did not

show that the Nation has a longstanding history and tradition of disarming people

like Range.  *Range v. Att'y Gen.*, 69 F.4th 96, 98 (3d Cir. 2023) (en banc) ("*Range*

*I*").

The Government filed a petition for writ of certiorari.  While that petition

was pending, the Supreme Court decided *Rahimi*.  The Court then vacated *Range I*

and remanded for further consideration. *Garland v. Range*, 144 S. Ct. 2706 (2024).

In the second *en banc* opinion following remand, the Third Circuit reached the same conclusions as in *Range I*. The Circuit concluded that Bryan Range remains one of "the people" for purposes of the Second Amendment notwithstanding his prior conviction. *Range II*, 124 F.4th at 226–28. The Circuit next concluded that Section 922(g)(1) regulates Second Amendment conduct and "'the Constitution presumptively protects that conduct.'" *Id.* at 228 (quoting *Bruen*, 597 U.S. at 17). The Circuit then examined whether the Government had shown that applying Section 922(g)(1) to Range would be "'consistent with the Nation's historical tradition of firearm regulation'" and concluded that it had not carried its burden. *Id.* (quoting *Bruen*, 597 U.S. at 24). The Third Circuit concluded its analysis as follows:

> Our decision today is a narrow one. Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of 62 Pa. Stat. Ann. § 481(a). Range remains one of "the people" protected by the Second Amendment, and his eligibility to lawfully purchase a rifle and a shotgun is protected by his right to keep and bear arms. More than two decades after he was convicted of food-stamp fraud and completed his sentence, he sought protection from prosecution under § 922(g)(1) for any future possession of a firearm. The record contains no evidence that Range poses a physical danger to others. Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights.

*Id.* at 232.

Soon after *Range II* was decided, the Third Circuit addressed another civil case in which a plaintiff convicted of a felony offense brought suit seeking a declaration that application of Section 922(g)(1) to him would violate the Second Amendment. *Pitsilides v. Barr*, 128 F. 4th 203 (3d Cir. 2025). Upon examination of *Bruen*, *Rahimi*, and *Range II*, the Court explained the "upshot of these cases." *Id.* at 210–11. First, a court's "inquiry into *principles* that underlie our regulatory tradition does not reduce historical analogizing to an exercise in matching elements of modern laws to their historical predecessors." *Id.* at 210 (emphasis supplied). Second, "whatever other recourse may or may not be available, felons seeking to challenge the application of § 922(g)(1) at least may bring declaratory judgment actions" and relief may be granted on a record sufficient to enable "individualized fact-finding." *Id.* Finally, "while *Rahimi* and *Range II* did not purport to comprehensively define the metes and bounds of justifiable burdens on the Second Amendment right, they do, at a minimum, show that disarmament is justified as long as a felon continues to 'present a special danger of misus[ing firearms],' in other words, when he would likely 'pose[] a physical danger to others' if armed." *Id.* (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232). The *Pitsilides* decision makes clear that the "'Second Amendment's touchstone is dangerousness.'" *Id.* at 210–11 (quoting *Folajtar*, 980 F.3d at 924 (Bibas, J.,

dissenting); citing *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J.,

dissenting), *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per

curiam), *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024), and *United*

*States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024)).

Ultimately, the Court remanded to the District Court for additional discovery

probative "to the prevailing Second Amendment analysis, including whether

Pitsilides poses a special danger of misusing firearms in a way that would endanger

others." *Pitsilides*, 128 F.4th at 213.  However, the Court instructed that:

> Courts adjudicating as-applied challenges to § 922(g)(1) must consider
> a convict's entire criminal history and post-conviction conduct
> indicative of dangerousness, along with his predicate offense and the
> conduct giving rise to that conviction, to evaluate whether he meets the
> threshold for continued disarmament.  As *Range II* illustrated,
> consideration of intervening conduct plays a crucial role in determining
> whether application of § 922(g)(1) is constitutional under the Second
> Amendment. *See* 124 F.4th at 232.  Indeed, such conduct may be highly
> probative of whether an individual likely poses an increased risk of
> "physical danger to others" if armed.  *Id.*

*Id.* at 212.  That is because an individual may be disarmed "consistent with the

historical principle that legislatures may disarm a person who poses a danger to the

physical safety of others."  *Id.* (citing *Rahimi*, 602 U.S. at 693; *Range II*, 124 F.4th

at 232; *Bullock*, 123 F.4th at 185; *Williams*, 113 F.4th at 662; and *Jackson*, 110

F.4th at 1128.)  Further, the Court observed that "both history and common sense

reflect that this 'dangerousness' includes not only direct involvement in physical

violence" but also conduct that is "'dangerous because [it] often lead[s] to

violence,'" such as burglary and drug dealing. *Id.* at 213 (quoting *Folajtar*, 980

F.3d at 922 (Bibas, J., dissenting); citing *Williams*, 113 F.4th at 659). This

assessment "necessarily requires individualized factual findings." *Id*.

The Third Circuit has issued two non-precedential decisions in criminal

cases following the decisions in *Range II* that provide additional guidance relevant

to this matter. In *United States v. White*, No. 23-3013, 2025 WL 384112, at *2 (3d

Cir. Feb. 4, 2025), *petition for cert. filed*, No. 24-7158 (May 8, 2025), the Court

rejected the Second Amendment challenge to Section 922(g)(1) because White's

"prior felony convictions for drug distribution, aggravated assault, and carrying a

firearm without a license demonstrate that he 'present[s] a special danger of

misus[ing firearms],' and would likely pose an increased risk of 'physical danger

to others' if armed." 2025 WL 384112, at *2 (quoting *Rahimi*, 602 U.S. at 698;

*Range II*, 124 F.4th at 232). Looking at White's entire criminal history, the Court

concluded that his convictions, considered collectively, show that White would

pose a danger to others if armed because his prior criminal activities could lead to

violent confrontation. *Id.* (citing *Williams*, 113 F.4th at 659 for the proposition that

legislatures may disarm those convicted of crimes like drug dealing because such

crimes pose a significant threat of danger, warranting disarmament).

In *United States v. Williams*, No. 23-2773, 2025 WL 1341877, at *2 (3d Cir.

May 8, 2025), the Court concluded that the District Court did not commit plain

error in rejecting Williams' Second Amendment challenge. That is because Williams has a lengthy criminal history that distinguished him from Bryan Range, including two convictions for possession of cocaine with intent to distribute, one conviction for possession of marijuana with intent to distribute, and one conviction for child endangerment. *Id.* Given Williams' "dramatically different criminal record," the Circuit's narrow holding in *Range II* did not compel the dismissal of the Section 922(g)(1) conviction. *Id.*

Finally, there are two additional precedential decisions from the Third Circuit that provide additional guidance with respect to the analysis of a Second Amendment challenge to Section 922(g)(1). In *United States v. Moore*, 111 F.4th 266, 273 (3d Cir. 2024), *petition for cert. filed*, No. 24-968 (Mar. 7, 2025), the Third Circuit held that "[a] convict completing his sentence on [federal] supervised release does not have a Second Amendment right to possess a firearm." And, in *United States v. Quailes*, 126 F.4th 215, 224 (3d Cir. 2025), *petition for cert. filed*, No. 24-7033 (Apr. 18, 2025), the Third Circuit extended the holding in *Moore* to individuals on state parole or probation. However, this precedent is not controlling in this case because the defendant was not on any form of supervision at the time of the alleged offense conduct.

### 3. Application of Relevant Precedent to Defendant's Second Amendment Challenge

#### i. *Bruen* Step One Analysis

The first question is whether the text of the Second Amendment applies to Defendant and his conduct. *See Bruen*, 597 U.S. at 31–33; *Range II*, 124 F.4th at 225; *Pitsilides*, 128 F.4th at 209. Here, the Government concedes that Hill-Price remains among "the people" despite his felony convictions. (Doc. 124, pp. 12–13.) Rightfully so, based on the controlling precedent in *Range II* concluding that an individual who has a felony conviction remains among "the people." *See Range II*, 124 F.4th at 228.

The Government, however, protests that the Second Amendment does not apply to Defendant's conduct because he has not attested in this case that he possessed a gun for a lawful purpose such as self-defense and because Hill-Price possessed a stole firearm, which is unlawful for anyone. (Doc. 124, pp. 13–17.) Defendant disagrees, asserting that such attestation is not required by either Section 922(g)(1) or the *Range* decision. (Doc. 129, pp. 2–3.)

In *Range II*, the Court characterized "the easy question" as "whether § 922(g)(1) regulates Second Amendment conduct." 124 F.4th at 228. The Court then stated: "It does." *Id.* In relevant part, the statute makes the possession of any firearm or ammunition unlawful for a person convicted of an offense punishable by imprisonment for a term exceeding one year. 18 U.S.C. § 922(1). The statute

criminalizes the possession of any firearm or ammunition for any purpose (lawful or otherwise) by this class of persons. And it appears that the Circuit determined in *Range II* that this regulation of this specific conduct is clearly covered by the Second Amendment.

The Government's argument that Defendant's purpose for possession is relevant may arise from the Circuit's observation that the relief requested in Range's civil suit to possess firearms to hunt and protect himself fit squarely within the constitutional right as defined by *Heller*. *See Range II*, 124 F.4th at 228. But immediately following this observation, the Court then quoted the following portion of the *Heller* decision: "The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Range II*, 124 F.4th at 228 (quoting *Heller*, 554 U.S. at 582). Reviewing this paragraph in *Range II* in totality, rather than the sole sentence about Bryan Range's expressed purpose in filing his declaratory judgment action, the court understands that the Circuit concluded that Section 922(g)(1) regulates Second Amendment conduct because it criminalizes the possession of any firearm or ammunition by a class of persons, regardless of the purpose for the possession (which would include lawful purposes, such as Bryan Range's).

The court also notes that in the non-precedential *White* decision, where the criminal defendant argued that Section 922(g)(1) is unconstitutional as applied to

him, the Circuit did not address the first *Bruen* question at all, and only addressed the second *Bruen* question.  2025 WL 384112 at *2.  Since *Bruen* instructs that the second step of conducting a historical tradition analysis is only necessary when the person and his conduct are covered by the Second Amendment, 597 U.S. at 24, this may suggest that the Circuit has determined that the first *Bruen* question did not require further discussion in the context of a Second Amendment challenge to Section 922(g)(1).  On the other hand, it may suggest that when a defendant's challenge fails at the second *Bruen* step, as was the case in *White*, it is not necessary to analyze the first *Bruen* step.  In any event, the Circuit clearly did not analyze whether the defendant in *White* stated a purpose for his possession of a firearm.

### ii. *Bruen* Step Two Analysis

Having determined that the defendant and his conduct are covered by the Second Amendment and presumptively protected, the court must next determine "whether the Government can strip him of his right to keep and bear arms" by analyzing whether application of Section 922(g)(1) to this defendant is "'consistent with the Nation's historical tradition of firearm regulation.'"  *Range II*, 124 F.4th at 228 (quoting *Bruen*, 597 U.S. at 24); *see also Pitsilides*, 128 F.4th at 209.

The court's analysis of the *Bruen* step two question is guided by the controlling precedent in *Range II* and *Pitsilides*.  As detailed previously, the court

will assess this question according to "the prevailing Second Amendment analysis, including whether [the individual at issue] poses a special danger of misusing firearms in a way that would endanger others." *Pitsilides*, 128 F.4th at 213.  The court will consider the defendant's "entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament." *Pitsilides*, 128 F. 4th at 212.  That is because an individual may be disarmed "consistent with the historical principle that legislatures may disarm a person who poses a danger to the physical safety of others." *Id.*; *see also Range II*, 124 F.4th at 230 (citing *Rahimi* in support of the proposition that disarming (at least temporarily) physically dangerous people based on a finding that such person poses a safety threat is consistent with the historical tradition of disarming people who pose a clear threat of physical violence to another); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024); *United States v. Williams*, 113 F.4th 637, 649–663 (6th Cir. 2024).

    In conducting this analysis, the court is mindful of the narrowness of the *Range II* holding.  The Circuit found only that our Nation's history and tradition do not support permanent disarmament of Bryan Range who only has a two-decades old conviction for food-stamp fraud and there is no evidence of ongoing recidivism or threat of physical danger to others.  *See Range II*, 124 F.4th at 232.  In assessing

20

whether the criminal record and available background information about the defendant in this case lead to the conclusion that the defendant is, in fact, sufficiently dangerous so that the application of Section 922(g)(1) to him is consistent with the Second Amendment, the court will view Bryan Range as one data point on the dangerousness spectrum, specifically, on the far end of non-dangerousness.

The Government contends that applying Section 922(g)(1) to Hill-Price is constitutional because his three drug trafficking felonies are "serious and indicate that his firearm possession would pose a danger to himself or others." (Doc. 149, p. 30–35.) Because Hill-Price is pending sentencing and a presentence investigation report ("PSR") has been prepared, the Government relied on the convictions detailed in the PSR, specifically three prior convictions for felony drug trafficking. (Doc. 149, pp. 4–5; Doc. 104, ¶¶ 37–39.) The Government submits that these prior convictions provide a basis to reject Hill-Price's constitutional challenged based on the demonstrated dangerousness of drug trafficking crimes and likelihood of violence that accompanies drug trafficking. (Doc. 149, pp. 30–35.)

Hill-Price maintains that the Government has not met its burden of showing the Nation's historical tradition of permanently disarming him as no record has been developed on the "dangerousness" inquiry. (Doc. 150, pp. 2–5, & n.3.)

21

Having considered both parties' arguments, the court concludes that Hill-Price's three prior convictions for felony drug trafficking demonstrate that Hill-Price presents a danger of misusing firearms and would likely pose an increased risk of physical danger to others if permitted to be armed.[4] *See White*, 2025 WL 384112 at *2 (holding that defendant's prior criminal convictions for possession with intent to distribute controlled substances, aggravated assault, and carrying an unlicensed firearm "shows that he would pose such a danger to others if armed because those activities could lead to violent confrontation"); *Williams*, 113 F.4th at 663 (holding that a person convicted of a crime is dangerous and can be disarmed if he has committed, among others, "a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary"); *Williams*, 2025 WL 1341877 at *2 (holding that prior convictions for possession with intent to distribute cocaine and marijuana and child endangerment constitute a "dramatically different criminal record" than Bryan Range for purposes of Second Amendment analysis); *Mollett*, 2025 WL 564885 at *7 (holding that three prior convictions for drug trafficking less than two years prior

---

[4] *See also United States v. Birry*, No. 3:23-cr-288, 2024 WL 3540989, at *8 (M.D. Pa. July 25, 2024) (finding that two prior convictions for possession with intent to distribute methamphetamine showed defendant posed a credible threat to public safety); *United States v. Roach*, No. 2:24-cr-77, 2025 WL 871618, at *2 (E.D. Pa. Mar. 20, 2025) (discussing that "drug dealing" convictions establish a defendant's dangerousness); *United States v. Trusty*, 2025 WL 830124, at *5 (D.N.J. Mar. 17, 2025) (holding that defendant's four "prior drug offenses *were* dangerous because *drug dealing* is inherently dangerous").

to the Section 922(g)(1) offense support the conclusion that defendant presented a special danger of misusing firearms and was subject to disarmament).

Hill-Price's argument that the dangerousness requirement creates a vagueness in Section 922(g)(1) that rises to the level of a due process violation making the statute facially unconstitutional also fails. (*See* Doc. 150, pp. 6–7.) First, this argument was raised for the first time in Hill-Price's supplemental reply brief and the Government has not had an opportunity to respond. Thus, as a procedural matter, the court will not review an argument raised for the first time in a reply brief. Even so, this is not a colorable argument because Hill-Price fails to show how Section 922(g)(1) is unconstitutional as applied to him, which is required to sustain a facial vagueness challenge. *See United States v. Harris*, No. 21-3031, --- F.4th ----, 2025 WL 1922605, at *9 (3d Cir. 2025) ("The Supreme Court has long held that, with few exceptions, a defendant whose conduct is 'clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'")

Based on this review of Hill-Price's criminal record, it is clear that Hill-Price presents a far greater risk of dangerousness than Bryan Range if permitted to be armed. Thus, based on the above analysis, the court concludes that Section 922(g)(1) is not unconstitutional as applied to Hill-Price.

## CONCLUSION

For the foregoing reasons, Hill-Price's motion for reconsideration, Doc. 109, will be granted, and his motion to dismiss Count 6, Doc. 66, will be denied. An implementing order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: July 22, 2025